**Clem BROWN, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–505.

United States Court of Veterans Appeals.

Submitted Sept. 9, 1991.

Decided June 1, 1992.

Clem Brown, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Barry F. Bohan were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Associate Judges.

MANKIN, Associate Judge:

Appellant, Clem Brown, has noted an appeal from a July 6, 1989, Board of Veterans' Appeals (BVA or Board) decision to deny his claim for entitlement to a permanent and total disability rating for a non-service-connected pension relating to sarcoidosis (a chronic disease of unknown cause) of the liver and lungs, personality disorder, and a reconstructed left tibia (the larger bone between the knee and ankle). We hold that while the regulations of the Department of Veterans Affairs are confusing, they are consistent with the relevant statute. We further hold that a new physical examination must be performed to accurately identify the percentage of disability attributable to each specific handicap, and that the BVA's findings and conclusions were not supported by adequate "reasons or bases" for such findings and conclusions. 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)); *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). Therefore, the Court vacates the BVA decision, and remands the case to the BVA for proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND.

Appellant served in the U.S. Army from April 4, 1973, to June 3, 1974, receiving an honorable discharge. R. at 7. Subsequent to his military service, his work history consists primarily of construction work during 1978 and from 1985 to 1986. Appellant also worked as a cashier from 1981 to 1982 and 1984 to 1985, as a laborer in chemical spills from 1982 to 1985, and as a cook in 1985. R. at 22, 25. In June 1979,

appellant was in an automobile accident in which his left leg was crushed between two cars. He had reconstructive surgery on his left tibia. R. at 116–18. Apparently, the Veterans' Administration (now the Department of Veterans Affairs) (VA) granted appellant a combined 40% disability rating for his non-service-connected disabilities on December 30, 1980. R. at 14. This disability rating has remained in effect since 1980, and the VA has refused to assign a higher rating. R. at 14, 102, 109.

Between August 13 and October 22, 1986, appellant was hospitalized at the VA medical facility in Alexandria, Louisiana, four times for complaints of shortness of breath, night sweats, and lack of energy. R. at 8–13. While appellant has a history of sarcoidosis, he has not been treated for it since 1979. R. at 11. Several tests were done, all results within normal limits, except for his liver. R. at 8, 10, 13. The examining doctor opined that, "[h]is liver profile is abnormal which could be secondary to involvement due to sarcoidosis in addition to his ethanol abuse." R. at 12. A rating decision of January 5, 1987, denied appellant a 100% disability rating. R. at 14. The Social Security Administration (SSA) awarded appellant a disability payment based on unemployability on May 26, 1988. R. at 21–26. The administrative law judge noted that the "Social Security Act defines 'disability' as the inability to engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to either result in death or last for continuous period of not less than 12 months." R. at 21.

On July 28, 1988, appellant requested another physical examination from the VA in anticipation of reopening his claim of non-service-connected disability. R. at 40. The physical examination of September 5, 1988, revealed: sarcoidosis with mild restrictive respiratory impairment; the fracture of the left tibia healed satisfactorily; the abnormal liver was either residual sarcoidosis or "more likely early alcoholic cirrhosis of the liver"; and mixed substance abuse and dependency and a passive aggressive personality disorder, aggressive

type. R. at 43. After the case was re-opened, the rating specialists denied a total and permanent disability rating on October 4, 1988. R. at 55. On May 9, 1989, the VA reopened appellant's claim after he submitted the Social Security decision in support of his unemployability; however, an increase was denied again on June 6, 1989. R. at 102. Appellant filed a Notice of Disagreement with the New Orleans, Louisiana, VA Regional Office on June 28, 1989, and then filed a timely appeal to the Board on August 21, 1989. R. at 104, 110. The Board denied Mr. Brown's claim in its "Conclusion of Law", stating:

> The veteran's disabilities are less than 100 percent disabling and he is not permanently and totally disabled within the meaning of the governing law and regulations. (38 U.S.C. §§ 502, 521; 38 C.F.R. 3.321, 3.340, 3.342, and Part 4.)

*Clem A. Brown*, BVA 89–07869, at 5 (Mar. 15, 1990) (hereinafter *Brown*). Appellant brings this appeal from that decision.

## II. ANALYSIS.

### A.

The appellant is seeking a non-service-connected pension pursuant to 38 U.S.C. § 1521 (formerly § 521). Section 1521 provides in pertinent part:

> (a) The Secretary shall pay to each veteran of a period of war who meets the service requirements of this section (as prescribed in subsection (j) of this section) and who is permanently and totally disabled from non-service connected disability and not the result of the veteran's willful misconduct, pension at the rate prescribed by this section, as increased from time to time under section 3112 of this title.
>
> . . . .
>
> (j) A veteran meets the service requirements of this section if such veteran served in the active military, naval, or air service—
>
> > (1) for ninety days or more during a period of war; . . .

38 U.S.C. § 1521 (formerly § 521). To be eligible for a non-service-connected pension based on permanent and total disability under chapter 15, a two-part test must be met. First, the veteran must have served during a period of war. "The term 'Vietnam Era' means the period beginning August 5, 1964, and ending on May 7, 1975." 38 U.S.C. §§ 101(29) and 1521. The appellant's service in the U.S. Army from April 4, 1973, to June 3, 1974, during the "Vietnam Era," satisfies the first prerequisite of the statutory test.

■ The second prong of the test for pension disability benefits requires that the veteran be permanently and totally disabled. Permanent and total disability can be shown in one of two ways: either 1) the veteran must be unemployable as a result of a lifetime disability, or 2) if not unemployable, he must suffer from a lifetime disability which would render it impossible for the average person with the same disability to follow a substantially gainful occupation. *See* 38 U.S.C. § 1502(a) (formerly § 502(a)). This Court has held "that the Secretary's promulgation of the regulations regarding VA pension eligibility with a combination of objective and subjective standards is 'consistent with' 38 U.S.C. §§ 1521(a) and 1502(a)." *Talley v. Derwinski*, 2 Vet.App. 282, 287 (1992); *see* 38 C.F.R. § 4.17 (1991).

■ Although the Board in its decision, referred to "permanent and total disability" as "THE ISSUE", it did not enunciate which standard of section 1502(a) was being applied to the evaluation of appellant's claim. The Board found five disabilities. In discussing two of them, appellant's sarcoidosis and personality disorder, the Board considered the veteran's age, educational background, and occupational experiences, and concluded that despite those disabilities, he was not precluded from substantially gainful employment ("occupation" is the statutory term and "employment" is the regulatory term). The Board did not consider the other three disabilities in its evaluation. Likewise, the BVA did not contemplate whether, these three disabilities together with the veteran's sarcoidosis and personality disorder, would render appellant unemployable.

The Board further erred when it neglected to consider appellant under the "average person" test of 1502(a)(1). In claims for pension disability benefits, the Board must look not only to whether the veteran is unemployable due to a lifetime disability or combination of lifetime disabilities, but to whether the veteran "suffers from ... (1) any [lifetime] disability ... sufficient to render it impossible for an *average person* to follow a substantially gainful occupation." 38 U.S.C. § 1502 (emphasis added). The Board's decision contains no discussion as to whether appellant's combination of disabilities would render it impossible for the average person to find gainful employment.

While the statutory bifurcated standard of what constitutes a permanent and total disability allows for both objective and subjective criteria in the VA regulations, the standard must be applied in a consistent manner to all veterans. The case on appeal illustrates the difficulty and confusion of the regulations, which lead to an apparently ad hoc application of the law. For this reason, the Court strongly advises the Secretary "to undertake a broad-based review and revision (complete with the mandatory statutory-source reference) of the pension unemployability regulations to bring them fully into line with the statutory scheme as outlined in this opinion." *Talley*, 2 Vet. App. at 288.

### B.

■ Furthermore, having followed an incomplete and confusing analysis, the Court notes that the Board reached its conclusion without including the requisite "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions" as mandated by 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) to enable the veteran to understand the decision and for this Court to fulfill its function of judicial review. *See Sammarco v. Derwinski*, 1 Vet.App. 111, 112–113 (1991); *Gilbert*, 1 Vet.App. at 56. As this Court stated in *Gilbert*, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive.

These decisions must contain clear analysis and succinct but complete explanations." *Gilbert*, 1 Vet.App. at 57. The BVA failed to provide a clear statement of its reasons or bases as required by 38 U.S.C. § 7104(d)(1) for its conclusion that "[t]he veteran's disabilities are less than 100 percent disabling and he is not permanently and totally disabled within the meaning of the governing law and regulations." *Brown*, BVA 89–07869, at 5. After discovering the ambiguities and inconsistencies in the BVA's decision, we are compelled to overturn the Board's decision and remand this case for compliance with the statutory requirement and the standards established by this Court.

### C.

■ Not only is it unclear as to what standard was applied by the Board in reaching its conclusion that appellant's disabilities were permanent, yet not total, for unemployability purposes, but it is likewise inconceivable how an accurate determination could be made when there has not been a rating decision since 1980. In 1980, the VA apparently determined that appellant's non-service-connected disabilities added to a total combined 40% disability rating, though this rating decision was not included in the record on appeal. Nonetheless, the record is confusing as to whether the 40% disability rating applies to appellant's sarcoidosis of the lungs or liver, the problem with his left leg, or to his personality disorder. The rating decisions of January 5, 1987, October 4, 1988, and June 6, 1989, merely denied a 100% disability and confirmed that appellant was not unemployable, but never stated what percentage was attributable to each specific disability. In view of these ambiguities in the record, the Court remands this case for a new physical examination and a new rating decision to identify accurately the percentage of impairment attributable to each specific disability.

### D.

■ In its statement of the "reasons or bases," the Board must also include in its

decision "the precise bases for that decision, and ... the Board's response to the various arguments advanced by the claimant." *Gilbert*, 1 Vet.App. at 56. In his brief, appellant contends that since the SSA has deemed him unemployable and eligible for benefits, the Department of Veterans Affairs should also grant him eligibility for total disability benefits. Br. of Appellant at 1. The Board acknowledged receipt of the SSA's decision in the record, *Brown*, BVA 89–07869, at 2, yet failed to give this evidence any consideration or weight in its determination to deny appellant a total disability rating based on unemployability. The Board decision simply noted the differences in the SSA criteria, but did not say how the SSA unemployability decision was irrelevant to the issue before the BVA. This evidence is relevant to the determination of appellant's ability to engage in substantially gainful employment, which demonstrates the relevance and significance of the SSA decision as to the VA's current adjudication of appellant's claim. *Murincsak v. Derwinski*, 2 Vet.App. 363, 370–71 (1992). The decision of the administrative law judge at the SSA "cannot be ignored and to the extent its conclusions are not accepted, reasons or bases should be given therefor." *Collier v. Derwinski*, 1 Vet. App. 413, 417 (1991). *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991); *Sammarco*, 1 Vet.App. 111, 112 (1991); *Gilbert*, 1 Vet.App. at 56–57. For this reason, the decision of the BVA must be vacated and the case remanded for consideration of the SSA's decision and a statement of reasons or bases for the weight given to this evidence.

## III. CONCLUSION.

For the reasons stated above, the March 15, 1990, decision of the Board of Veterans' Appeals is VACATED, and this case is REMANDED to 1) enable the Department of Veterans Affairs to conduct a new medical examination; 2) establish a current rating decision based on percentages of specific disabilities; 3) properly apply 38 U.S.C. §§ 1502 and 1521; 4) consider all evidence in the record, including the Social Security Administration award of unemployability;

and 5) provide the BVA with the opportunity to include a statement of the reasons or bases, including the statutory and regulatory bases, for its findings and conclusions in light of the Court's recommendation to the Department of Veterans Affairs to review the regulations regarding total and permanent disability for unemployability in pension cases insofar as they are inconsistently applied.

*It is so Ordered.*